UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHERYL C.,

                Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

23-CV-06639-MJR

DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 16)

Plaintiff Cheryl C.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, Plaintiff's motion (Dkt. No. 11) is granted, and defendant's motion (Dkt. No. 13) is denied.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff applied for DIB and SSI in July 2021, alleging disability beginning on October 1, 2020. (Administrative Transcript ["Tr."] 75, 278-84). Her applications were denied initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 134-38, 141-45, 146-49, 150-51). After hearings held on March 29, 2023, and June 23, 2023, ALJ Kenneth Theurer issued a decision denying Plaintiff's claim on July 14, 2023. (Tr. 7-28, 36-66, 67-73). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). This action followed.

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*,

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets

the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] RFC based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III. *The ALJ's Decision*

The ALJ found at step one that Plaintiff had engaged in substantial gainful activity during some periods since her alleged onset date, but that there had been a continuous 12-month period during which the claimant had not engaged in substantial gainful activity. (Tr. 13). At step two, the ALJ found that Plaintiff had severe impairments of asthma, anxiety disorder, depressive disorder, and a neurocognitive disorder. (Tr. 13). The ALJ concluded at step three that Plaintiff's impairments, considered singly and in combination, did not meet or equal any of the listed impairments set forth in Appendix 1 of 20 C.F.R. Part 404, Subpart P. (Tr. 13-15). The ALJ then found that Plaintiff retained the RFC to perform work at all exertional levels, but with the following non-exertional limitations: Plaintiff needed to avoid concentrated exposure to smoke, dust and respiratory irritants; was limited to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements as would be experienced on an assembly line; Plaintiff was limited to work involving only simple work-related decisions and few, if any, workplace changes; and Plaintiff was capable of occasional contact with coworkers, supervisors and the public after learning her job duties from an instructional or demonstrational lesson. (Tr. 15-20).

At step four, the ALJ determined that Plaintiff was unable to return to any of her past relevant work. (Tr. 20). At step five, the ALJ determined there were other jobs in the

national economy that Plaintiff could perform, including the representative occupations of routing clerk, marker and page. (Tr. 20-21). The ALJ therefore concluded that Plaintiff was not disabled under the Act and denied her DIB and SSI claims. (Tr. 21).

IV.   *Plaintiff's Challenge*

Plaintiff argues, *inter alia*, that the case must be remanded, because although the ALJ found the medical opinion of consultative examiner Dr. Justine Magurno persuasive, he did not include limitations opined by Dr. Magurno in the RFC and failed to explain this omission. The Court agrees that remand is required.

"Where the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.'" *Ryan H. v. Comm'r of Soc. Sec.*, No. 20-CV-6035MWP, 2021WL 4059327, at *7 (W.D.N.Y. Sept. 7, 2021)(finding error when the ALJ did not cite any evidence contradicting the doctor's opinion as to time off-task and absentee rate)(quoting *Dioguardi v. Comm'r of Soc. Sec.*, 445 F.Supp.2d 288, 297 (W.D.N.Y. 2006)). It is well-settled that "an ALJ is not permitted to 'cherry pick' evidence that supports his RFC finding." *Michelle J. v. Comm'r of Soc. Sec.*, 21-CV-306, 2023 U.S. Dist. LEXIS 50656, at *8 (W.D.N.Y. Mar. 24, 2023) (defining cherry-picking as "inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source").

On March 11, 2022, Plaintiff underwent a physical consultative examination with Dr. Justine Mugurno, M.D. (Tr. 1634-37). During this examination, Plaintiff reported having allergies "to newspaper, cardboard, pollen, and dust." (Tr. 1634). Plaintiff stated that exposure to these substances causes her "a little shortness of breath and feel like things are closing up." (Tr. 1634). Plaintiff also reported having reactive airway disease

that is "triggered when she breathes in cardboard, newspaper." (Tr. 1634). She stated that these substances cause, "[h]er lungs [to] shut down and she cannot breathe." (Tr. 1634). In her report, Dr. Magurno diagnosed Plaintiff with reactive airway disease and allergies. (Tr. 1636-37). Dr. Magurno then opined in her medical source statement that "claimant should avoid pulmonary irritants and allergens." (Tr. 1637).

In his decision, the ALJ found Dr. Magurno's opinion persuasive, because the findings from Dr. Magurno's physical examination of Plaintiff supported her opinion, and because her opinion is consistent with the treatment records and the overall record. (Tr. 20). Nevertheless, in his RFC finding, the ALJ did not incorporate Dr. Magurno's limitation that Plaintiff "should avoid pulmonary irritants and allergens." (Tr. 1637). Instead, the RFC states that Plaintiff "should avoid **concentrated** exposure to smoke, dust, and respiratory irritants." (Tr. 15, emphasis added). Dr. Magurno's limitation is much broader than that of the ALJ, and the ALJ provides no explanation or rationale for rejecting that part of Dr. Magurno's opinion.

In *Renee v. Berryhill*, No. 1:15-cv-00400 (MAT), 2017 WL 6618737, at *3 (W.D.N.Y. Dec. 27, 2017), the court noted that "[t]he lack of any qualifier in the phrase 'avoid pulmonary irritants' necessarily indicates that plaintiff should avoid any exposure to such irritants, and not just concentrated or excessive exposure." Moreover, in *Riley-Tull v. Berryhill*, No. 16-CV-151-FPG, 2017 WL 2821559, at *4 (W.D.N.Y. June 30, 2017), the court found error when the ALJ failed to explain why a doctor's environmental limitation of "should avoid dust and other irritating factors" was not incorporated as part of the RFC finding, reasoning that "[t]his unexplained inconsistency is particularly harmful because the degree to which [Plaintiff] can tolerate pulmonary irritants directly impacts

her employability" and the Plaintiff "might be rendered disabled if she must avoid pulmonary irritants altogether." 2017 WL 2821559, at *4.

Similarly, in the present case, the ALJ's rejection of Dr. Magurno's opinion is harmful. "A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony." *Julianne E. v. Comm'r of Soc. Sec.*, No. 21-cv-0538-FPG, 2023 WL 3316580, at *3 (W.D.N.Y. May 9, 2023) (quoting *Slattery v. Colvin*, 111 F.Supp.3d 360, 375 (W.D.N.Y. 2015)). The hypothetical limitations presented to the vocational expert did not include the phrase "avoid pulmonary irritants and allergens," and did not reference newspaper and cardboard as particular substances that trigger Plaintiff's breathing problems. (Tr. 61-66).

Moreover, at step five, the ALJ found that Plaintiff could perform the occupations of a routing clerk, DOT Code 222.687-022; marker, DOT Code 209.587-034; and page, DOT Code 249.687-014. (Tr. 20-21). In the position of a routing clerk an individual "[s]orts bundles, boxes or lots of articles for delivery." Dictionary of Occupational Titles, DICOT 222.687-022. It is reasonably likely that these bundles, boxes, or lots of articles would contain cardboard, and thus, trigger Plaintiff's breathing issues as opined by Dr. Magurno. Also, in the position of a marker, an individual "[m]arks selling price by hand on boxes containing merchandise, or on price tickets." Dictionary of Occupational Titles, DICOT 209.587-034. These boxes would likely be made of cardboard and be a potential trigger. Lastly, the position of a page requires an individual to locate library materials, "such as books, periodicals, and pictures for loan, and replaces material in shelving area (stacks) or files, according to identification number and title." Dictionary of Occupational Titles,

DICOT 249.687-014. These periodicals would likely include newspapers, and therefore, would trigger Plaintiff's breathing issues as opined by Dr. Magurno.

Defendant's counsel offers a number of *post hoc* explanations supporting the ALJ's decision. However, a reviewing court may not accept "counsel's *post hoc* rationalizations for agency action." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999); *see also Warcholak v. Colvin*, 16-CV-129, 2017 U.S. Dist. LEXIS 20806, at*8 (W.D.N.Y. Feb. 14, 2017); *Elder v. Comm'r of Soc. Sec.*, 15-CV-7370, 2017 U.S. Dist. LEXIS 44418, at *39 (E.D.N.Y. Mar. 24, 2017); *Petersen v. Astrue*, 2 F. Supp. 3d 223, 234 (N.D.N.Y. 2012).[3]

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is granted and defendant's motion for judgment on the pleadings (Dkt. No.13) is denied. The case is remanded for further administrative proceedings. The Clerk of Court shall take all steps necessary to close the case.

**SO ORDERED.**

Dated: March 3, 2026
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

---

[3] Plaintiff also argues that this case must be remanded because the ALJ improperly evaluated medical opinions regarding Plaintiff's mental RFC, The defendant should also consider this argument on remand.